UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

BAO LINH PHAM,

Petitioner,

v.

BRUCE SCOTT,[1]

Respondent.

CASE NO. 2:26-cv-00027-LK

ORDER GRANTING HABEAS PETITION

This matter comes before the Court on Petitioner Bao Linh Pham's Petition for Writ of Habeas Corpus. Dkt. No. 1. The Court declines to hold an evidentiary hearing because the record

---

[1] Pham lists "ICE Processing Center" as the Respondent to this petition. Dkt. No. 1 at 1. He describes the Northwest ICE Processing Center where he is held by reference to its address "1623 East J Street" in "Tacoma, WA." *Id.* at 2; *see also Northwest ICE Processing Center (NWIPC)*, U.S. Immigration and Customs Enforcement, https://www.ice.gov/detain/detention-facilities/northwest-ice-processing-center-nwipc (last visited January 28, 2026). The proper respondent in a habeas petition is the *warden* of the facility at which the petitioner is located. *Rumsfeld v. Padilla*, 542 U.S. 426, 435 (2004). Consistent with its obligation to construe pro se filings leniently, the Court substitutes Warden Bruce Scott as the respondent in this matter. *See Johnson v. Miller*, No. 2:12-cv-1650 GGH P, 2012 U.S. Dist. LEXIS 130326, at *1 n.1 (E.D. Cal. Sep. 12, 2012); *Hutton v. Entzel*, No. CV 25-97-DLB, 2025 WL 3211546, at *1 n.1 (E.D. Ky. Oct. 22, 2025); *Gregory v. Macauley*, No. 22-13119, 2025 WL 424508, n.1 (E.D. Mich. Feb. 6, 2025). While Bruce Scott has not appeared in this case, (1) the purpose of naming the petitioner's custodian is to effectuate injunctive relief where appropriate, *see Padilla*, 542 U.S. at 435 (the custodian has "the power to produce the body of [the petitioner] before the court or judge," such that "he may be liberated if no sufficient reason is shown to the contrary" (citation modified)); and (2) federal respondents often represent the warden's interests, as they do in this case, *see Doe v. Garland*, 109 F.4th 1188, 1196 (9th Cir. 2024) ("Even in cases where private contract wardens are named as respondents, the government can and has stepped in to defend its interest in keeping petitioners detained."). Indeed, the Government filed a motion in opposition Pham's petition and did not raise this concern. *See* Dkt. No. 6.

ORDER GRANTING HABEAS PETITION - 1

is sufficient for adjudication of the petition. *See Owino v. Napolitano*, 575 F.3d 952, 954 (9th Cir. 2009) (holding that "the district court must hold an evidentiary hearing" where "the record is insufficient to decide whether [the petitioner's] detention is authorized by statute"). For the reasons described below, the Court grants the petition.

## I.    BACKGROUND

In a form petition filed pro se, Pham avers that he is unlawfully detained at the Northwest Immigration and Customs Enforcement Processing Center ("NWIPC") located in Tacoma, Washington. *Id.* at 2. He is "a native and citizen of Vietnam who entered the United States as a refugee on or about October 24, 1979," and a final order for his removal was issued on June 6, 2001. Dkt. No. 7 at 2; *see also* Dkt. No. 1 at 4. "At the time ICE was unable to remove [Pham] to Vietnam, and on September 7, 2001, [he] was released on an Order of Supervision ("OSUP")" because there was not a significant likelihood of removal. Dkt. No. 7 at 2. "Over the subsequent decades, [Pham] came back into ICE custody several times surrounding criminal convictions and OSUP violations." *Id.* Most recently, he was re-released on an OSUP on January 10, 2006. *Id.* at 2–3.

Nearly 20 years later, on December 8, 2025, Pham was "detained coming out of his apartment" by U.S. Customs and Border Protection ("CBP") agents. *Id.* at 3. An I-205 Warrant of Removal/Deportation issued, stating that Pham was subject to removal pursuant to the Immigration and Nationality Act ("INA") Section 237(a)(2)(A)(iii), codified at 8 U.S.C. § 1227. *See* Dkt. No. 8-7 at 2.[2] Pham was transferred to NWIPC on the same day "for removal to Vietnam," and "a Notice of Revocation of Release was issued, advising Petitioner that [his] OSUP was being

---

[2] The Government avers that an "I-200 Warrant for Arrest" was issued, Dkt. No. 7 at 3, but does not submit evidence substantiating that assertion, *see* Dkt. Nos. 7, 8, 8-1–8-7, instead submitting an "I-205 Warrant of Removal/Deportation," Dkt. No. 8-7. The Government's other exhibits are jumbled and do not track the order described in the Stahman Declaration. *See generally* Dkt. Nos. 8, 8-1–8-7.

revoked due to failing to report to ICE in person and the accrual of additional criminal charges since the most recent OSUP release." Dkt. No. 7 at 3. According to Respondent, Pham "was provided an informal interview, but did not provide a response regarding the reasons for revocation of OSUP." *Id.* Respondent is actively working to obtain travel documents for Pham. *Id.* at 3–4.

As of January 20, 2026—the date Respondent filed its return—Pham "has been in detention for 43 days" since he was apprehended by CBP. Dkt. No. 6 at 2. "[H]owever, over the last thirty years," he has been in custody for over 350 days. *Id.*

## II.    DISCUSSION

### A.    Legal Standards

"Courts in this circuit have an obligation to give a liberal construction to the filings of pro se litigants, especially when they are civil rights claims by [incarcerated persons]." *Blaisdell v. Frappiea*, 729 F.3d 1237, 1241 (9th Cir. 2013). While the Court may not supply essential elements of a claim that were not initially pled, *Byrd v. Maricopa Cnty. Sheriffs Dep't*, 629 F.3d 1135, 1140 (9th Cir. 2011), the Court must afford "the benefit of any doubt" to the incarcerated petitioner, *Bretz v. Kelman*, 773 F.2d 1026, 1027 n.1 (9th Cir. 1985) (en banc). The Court reviews Pham's petition accordingly.

The Constitution guarantees the availability of the writ of habeas corpus "to every individual detained within the United States." *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004) (citing U.S. Const., Art I, § 9, cl. 2). "[T]he essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and . . . the traditional function of the writ is to secure release from illegal custody." *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973). A writ of habeas corpus may be granted to a petitioner who demonstrates that he is in custody in violation of the Constitution or federal law. 28 U.S.C. § 2241(c)(3). Historically, "the writ of habeas corpus has served as a means of reviewing the legality of Executive detention, and it is in that context that its

ORDER GRANTING HABEAS PETITION - 3

protections have been strongest." *I.N.S. v. St. Cyr*, 533 U.S. 289, 301 (2001). Accordingly, a district court's habeas jurisdiction includes challenges to immigration detention. *See Zadvydas v. Davis*, 533 U.S. 678, 687 (2001).

Under the Due Process Clause of the Fifth Amendment to the United States Constitution, no person shall be "deprived of life, liberty, or property, without due process of law[.]" U.S. Const. amend. V. "The Fifth Amendment guarantees due process in deportation proceedings." *Torres-Aguilar v. I.N.S.*, 246 F.3d 1267, 1270 (9th Cir. 2001). "[T]he Due Process Clause applies to all 'persons' within the United States, including [noncitizens], whether their presence here is lawful, unlawful, temporary, or permanent." *Zadvydas*, 533 U.S. at 693; *see also Demore v. Kim*, 538 U.S. 510, 523 (2003) (recognizing that Fifth Amendment due process protections extend to deportation proceedings, but noting that "detention during deportation proceedings [is] a constitutionally valid aspect of the deportation process").

When a final order of removal has been entered, a noncitizen enters a 90-day "removal period." 8 U.S.C. § 1231(a)(1). To ensure a noncitizen's presence for removal and to protect the community from noncitizens who may present a danger, Congress mandated detention during the removal period. 8 U.S.C. § 1231(a)(2). Section 1231(a)(6) authorizes ICE to continue detention of noncitizens after the expiration of the removal period. 8 U.S.C. § 1231(a)(6). Although there is no statutory time limit on detention pursuant to Section 1231(a)(6), the Supreme Court has held that a noncitizen may be detained only "for a period reasonably necessary to bring about that [noncitizen's] removal from the United States." *Zadvydas*, 533 U.S. at 689. "[O]nce removal is no longer reasonably foreseeable, continued detention is no longer authorized by statute." *Id.* at 699.

The "presumptively reasonable" period for detention following a removal order is six months. *Id.* at 701. "After this 6-month period, once the [non-citizen] provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the

ORDER GRANTING HABEAS PETITION - 4

Government must respond with evidence sufficient to rebut that showing." *Id.* "And for detention to remain reasonable, as the period of prior postremoval confinement grows, what counts as the 'reasonably foreseeable future' conversely would have to shrink." *Id.* Section 1231(a)(6) thus "requir[es] release from long-term detention" when there is no significant likelihood of removal in the reasonably foreseeable future. *Jennings v. Rodriguez*, 583 U.S. 281, 311 (2018) (citation modified).

**B.      Pham is Entitled to Release**

Respondent avers that Pham is "lawfully detained under Section 241 of the [INA]" because he "is a noncitizen subject to an administratively final order of removal[.]" Dkt. No. 6 at 2. Therefore, as Respondent acknowledges, *id.*, 8 U.S.C. § 1231—pertaining to "[d]etention and removal of [noncitizens] ordered removed"—governs Pham's detention. As discussed above, the "presumptively reasonable" period for detention under 8 U.S.C. 1231(a)(1) following a removal order is six months, after which the noncitizen may "provide[] good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, [and] the Government must respond with evidence sufficient to rebut that showing." *Id.* at 701.

Despite its assertion that Pham was advised that his "OSUP was being revoked due to failing to report to ICE in person and the accrual of additional criminal charges since the most recent OSUP release," Dkt. No. 7 at 3, and its argument that "[t]he danger Petitioner poses to the community must be considered when determining the reasonableness of his detention to date," Dkt. No. 6 at 7, Respondent puts forth no standard other than *Zadvydas* as applicable to Pham's petition. Indeed, Respondent's sole legal argument in response to the petition is that Pham's

ORDER GRANTING HABEAS PETITION - 5

"detention is not indefinite or unconstitutionally prolonged" under *Zadvydas*. *Id.* at 5.[3] *Zadvydas* is clear that courts "should measure reasonableness primarily in terms of the statute's basic purpose, namely, assuring the [noncitizen's] presence at the moment of removal," so "if removal is not reasonably foreseeable, the court should hold continued detention unreasonable and no longer authorized by statute." 533 U.S. at 699–700.

The parties do not fully brief whether the Court should consider Pham's detention cumulatively when assessing whether it is reasonable. According to Respondent, "ICE has detained Petitioner for less than two months since he was arrested on December 8, 2025," and Respondent "does not concede that Petitioner's detention should be measured in the aggregate." Dkt. No. 6 at 6. However, Respondent does not provide any argument for why Pham's detention should not be considered in the aggregate. *See generally* Dkt. No. 6. Particularly when the Government has had difficulty removing a petitioner in the past, "courts in this [Circuit] appear to uniformly aggregate detention periods, even over the span of decades[.]" *Phan v. Warden of Otay Mesa Det. Facility*, No. 25-CV-02369-AJB-BLM, 2025 WL 3141205, at *3 (S.D. Cal. Nov. 10, 2025) (citing *Tran v. Scott*, No. 2:25-CV-01886-TMC-BAT, 2025 WL 2898638, at *4 (W.D. Wash. Oct. 12, 2025); *Nguyen v. Scott*, 796 F. Supp. 3d 703, 721 (W.D. Wash. 2025); *Tang v. Bondi*, No. 2:25-CV-01473-RAJ-TLF, 2025 WL 2637750, at *4 (W.D. Wash. Sept. 11, 2025); *Huang v. Albarran, et al.*, No. 1:25-CV-01308 JLT EPG, 2025 WL 2986885, at *4 (E.D. Cal. Oct. 23, 2025); *Sied v. Nielsen*, No. 17-CV-06785-LB, 2018 WL 1876907, at *6 (N.D. Cal. Apr. 19, 2018); *S.F. v. Bostock*, No. 3:25-CV-01084-MTK, 2025 WL 2841022, at *4 (D. Or. Oct. 7, 2025)).

---

[3] The Department of Homeland Security record memorializing Pham's arrest states only that that he was "served with a revocation of order of supervision," Dkt. No. 8-2 at 3, and does not reflect that the revocation was for "failing to report to ICE in person and the accrual of additional criminal charges since the most recent OSUP release," Dkt. No. 7 at 3. And the I-205 Warrant of Removal/Deportation that was issued for Pham merely states that he was subject to removal pursuant to INA Section 237(a)(2)(A)(iii) (8 U.S.C. § 1227(a)(2)(A)(iii)). Dkt. No. 8-7 at 2. The Government acknowledges that after the 90-day removal period, detention under Section 1231(a)(6) is not mandatory even for noncitizens "removable under section . . . 1227(a)(2)[.]" Dkt. No. 6 at 4 (quoting 8 U.S.C. 1231(a)(6)).

ORDER GRANTING HABEAS PETITION - 6

Given the Government's prior inability to remove Pham and its lack of argument against aggregation, the Court considers Pham's detention in the aggregate for the purposes of the *Zadvydas* analysis.

In the aggregate, Pham has been detained for over 350 days since his final order of removal. Dkt. No. 6 at 2. This is over five months beyond the presumptively reasonable six-month threshold in *Zadvydas*. As the period of confinement has grown, "what counts as the 'reasonably foreseeable future' . . . . [has] shr[u]nk." *Zadvydas*, 533 U.S. at 701.

Pham states that "the Government had over 25 years to remove [him] and has not done so," and avers that "Vietnam [is] a country that won't a[ccep]t deportable [individuals]." Dkt. No. 1 at 3–4. Respondent contends that "[t]he Government of Vietnam has recently increased cooperation with the United States[,]" implicitly acknowledging the historic difficulty of removing individuals to Vietnam who arrived to the United States prior to 1995. Dkt. No. 6 at 5; *see also Trinh v. Homan*, 466 F. Supp. 3d 1077, 1083 (C.D. Cal. 2020) ("Between the end of the Vietnam War and 2008, Vietnam refused to repatriate any Vietnamese immigrants who had been ordered removed from the United States.").

1.     Removals to Vietnam

After the Vietnam War ended in 1975, the United States accepted "hundreds of thousands of Vietnamese refugees" under various humanitarian programs. *Trinh v. Homan*, 466 F. Supp. 3d 1077, 1083 (C.D. Cal. 2020) (summarizing history). Pham arrived in the United States in 1979. Dkt. No. 7 at 2. "In 1995, the U.S. and Vietnam established diplomatic relations; however, there was still no existing repatriation agreement between the countries." *Nguyen v. Hyde*, 788 F. Supp. 3d 144, 147 (D. Mass. 2025); *see also* Executive Office of the President, *Remarks Announcing the Normalization of Diplomatic Relations With Vietnam*, 1995 WL 18254812 (July 11, 1995). "Between the end of the Vietnam War and 2008, Vietnam refused to repatriate any Vietnamese

ORDER GRANTING HABEAS PETITION - 7

immigrants who had been ordered removed from the United States." *Trinh*, 466 F. Supp. 3d at 1083. In 2008, Vietnam agreed to begin accepting "repatriation requests for Vietnamese immigrants who had arrived in the United States after July 12, 1995," but that agreement provided that "Vietnamese citizens are not subject to return to Vietnam under this agreement if they arrived in the United States before July 12, 1995." *Id.* (citation modified).

"Over the years, ICE has undertaken a number of negotiations with the Government of Vietnam to establish a process for regularized removals of final order Vietnamese citizens who entered the U.S. before 1995." *Nguyen*, 796 F. Supp. 3d at 714 (citation modified). On November 21, 2020, the United States and Vietnam entered into a Memorandum of Understanding ("MOU") regarding pre-1995 Vietnamese immigrants. *See Dao v Bondi*, No. 2:25-cv-02340-LK, Dkt. No. 1-1 (W.D. Wash. Nov. 21, 2025). The purpose of the MOU is (1) to "establish a process of review and issuance of travel documents for Vietnamese citizens" who "arrived in the United States before July 12, 1995" and were later "ordered removed from the United States," and (2) "to facilitate the acceptance of all such Vietnamese citizens[.]" *Id.* at 2.

Section Four of the MOU states that Vietnam intends to accept the removal of individuals "who meet[] all the following [four] conditions." *Id.* at 3. The individual must (1) have Vietnamese citizenship and not the citizenship of any other country; (2) have "violated U.S. law," been ordered removed by the United States, and finished serving any U.S. prison sentence; (3) have resided in Vietnam before arriving in the United States and not have the right to reside in any other country; and (4) satisfy a final condition that is redacted in the publicly disclosed version of the MOU. *Id.* at 3–4. The Government has not disclosed any information about what the fourth condition requires either here or in other litigation before this Court. *See generally* Dkt. Nos. 6–8; *see also Dao*, 2026 WL 18626, at *3 (W.D. Wash. Jan. 2, 2026); *Nguyen v. Scott*, 796 F. Supp. 3d at 714.

ORDER GRANTING HABEAS PETITION - 8

Sections Five and Six are redacted, but their headings suggest that they contain "factors that the United States intends to consider before requesting travel documents for a Vietnamese citizen and that Vietnam intends to consider before accepting an individual ordered removed." *Nguyen v. Scott*, 796 F. Supp. 3d at 714 (citation modified). To this Court's knowledge, the substance of those factors has not been disclosed publicly.

Section Eight of the MOU provides that Vietnam "intends" to issue travel documents or alert the United States of deficiencies within 30 calendar days of receipt. *Dao*, Dkt. No. 1-1 at 5.

On June 9, 2025, ICE rescinded its previous policy of "generally finding that pre-1995 Vietnamese immigrants are not likely to be removed in the reasonably foreseeable future and generally releasing them within 90 days of the entry of their final orders of removal." *Dao*, 2026 WL 18626, at *3 (citation modified); *see also Nguyen v. Scott*, 796 F. Supp. 3d at 715.

2.    Removals to Vietnam

Considering the facts averred by Pham, including that Vietnam has historically refused to accept Vietnamese nationals and that 25 years have elapsed since he was ordered removed, yet "the Government . . . has not [removed him]," Dkt. No. 1 at 3–4, the Court finds that he has "provide[d] good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future," so the Government must put forth "evidence sufficient to rebut that showing." *Zadvydas*, 533 U.S. at 701.

Respondent avers that "[w]ith increased cooperation from the government of Vietnam, ICE is working to effectuate Petitioner's removal to Vietnam," and "[n]ow that [Pham] has completed all the travel document forms, when translations of those documents are received, ICE will submit those to Vietnam." Dkt. No. 6 at 2. Respondent "anticipates that it will receive travel documents shortly thereafter, and [Pham] will be removed to Vietnam in the reasonably foreseeable future."

ORDER GRANTING HABEAS PETITION - 9

*Id.* Respondent includes a Declaration of Deportation Officer Anthony Rosa. Dkt. No. 7. Rosa declares, in relevant part, that:

- On December 18, 2025, the Government initiated translation of Pham's A-file. *Id.* at 3.

- On December 29, 2025, "a [Travel Document] Request packet was sent to a Detention and Deportation Officer at Headquarters Removal and International Operations ('HQRIO') for review." *Id.*

- "Once approved, the [Travel Document] Request will be sent to the ERO Attache in Vietnam to be provided to the government of Vietnam for issuance of a [Travel Document]." *Id.*

- The "Government of Vietnam has agreed to increase cooperation with the United States and issue travel documents within 30 days" and "is currently issuing travel documents within 30 days after the travel document request ('TDR') is provided to the government of Vietnam by the ERO Attache in Vietnam." *Id.* at 4.

- "In Fiscal Year 2024 (FY24), ICE removed 58 final order Vietnamese citizens to Vietnam. As of September 11, 2025, ICE had removed 569 final order Vietnamese citizens to Vietnam in Fiscal Year 2025 (FY25)." *Id.*

While Rosa declares that the Government of Vietnam "is currently issuing travel documents within 30 days after the travel document request," *id.*, no timeline is provided for when a travel request will be submitted to the Government of Vietnam. Indeed, it appears that as of January 20, 2026—the date of Respondent's return—numerous steps remain outstanding before a request can even be submitted to the Government of Vietnam. *See id.* at 3–4. According to Rosa, the Government must first approve the travel document request at HQRIO, then submit the request to the ERO Attache in Vietnam, after which the ERO Attache can submit the request to the Government of Vietnam. *Id.* Only then can the purported 30-day clock begin. *Id.* at 4. Respondent's failure to demonstrate a reasonable timeline for completion of the above processes undercuts the likelihood that Pham may be removed in the foreseeable future. Indeed, "[t]he fact that Respondents intend to complete a travel document request for Petitioner does not make it significantly likely he will be removed in the foreseeable future." *Hoac*, 2025 WL 1993771, at *4.

ORDER GRANTING HABEAS PETITION - 10

"General indications that U.S. agencies have been in discussions with [the target country] regarding repatriation efforts do not indicate that those discussions will result in the timely removal of Petitioner, as it is unclear whether those efforts will be successful." *Zhao v. Kelly*, No. CV 17-777-BRO (KES), 2017 WL 1591818, at *4 (C.D. Cal. Apr. 27, 2017); *see also Gilali v. Warden of McHenry Cnty. Jail*, No. 19-CV-837, 2019 WL 5191251, at *5 (E.D. Wis. Oct. 15, 2019) (holding that although the "respondent asserts that [the petitioner's] travel document requests . . . remain pending and ERO continues to follow up on the documents' status . . . [,] this is insufficient. It is merely an assertion of good-faith efforts to secure removal; it does not make removal likely in the reasonably foreseeable future.").

Moreover, even if the Government rapidly concluded the outstanding procedural steps and immediately requested travel documents from Vietnam, Respondent has not established that the travel documents will be approved in the reasonably foreseeable future. Respondent puts significant weight into the recent increase in removals to Vietnam, Dkt. No. 6 at 7, with Rosa emphasizing that "[i]n Fiscal Year 2024 (FY24), ICE removed 58 final order Vietnamese citizens to Vietnam," whereas "[a]s of September 11, 2025, ICE had removed 569 final order Vietnamese citizens to Vietnam in Fiscal Year 2025 (FY25)," Dkt. No. 7 at 4. This data does not rebut the low likelihood of removal because it is "missing some very pertinent information," such as the total requests for travel documents made in each year and how many of the issued travel documents pertained to pre-1995 arriving individuals. *Nguyen v. Hyde*, 788 F. Supp. 3d at 151. "The lack of information is especially significant given that since 2008, the United States has had a repatriation agreement to remove post-1995 Vietnamese refugees and that the United States has had a long history of not being able to remove pre-1995 Vietnamese arrivals." *Id.* At most, the Rosa Declaration demonstrates that there "is at least some possibility that Vietnam will accept Petitioner at some point"—a possibility that may not have existed before—"[b]ut that is not the same as a

significant likelihood that he will be accepted in the reasonably foreseeable future." *Nguyen v. Scott*, 796 F. Supp. 3d at 725. Because Respondent has not rebutted Pham's showing that "there is no significant likelihood of removal in the reasonably foreseeable future," his continued detention is unlawful under *Zadvydas*, 533 U.S. at 701, and he is entitled to release.

### III.   CONCLUSION

For the foregoing reasons, the petition for a writ of habeas corpus, Dkt. No. 1, is GRANTED, and the Court ORDERS as follows:

1.   Respondents shall immediately release Pham from custody subject to the conditions of his most recent order of supervision or on conditions otherwise compliant with 8 U.S.C. § 1231(a)(3). *See* 8 U.S.C. § 1231(a)(6) ("[I]f released, [a noncitizen ordered removed] shall be subject to the terms of supervision in paragraph (3).").

2.   Respondent shall file a status report by January 30, 2026, confirming that Pham has been released.

3.   The Clerk is directed to send uncertified copies of this Order to all counsel of record and to any party appearing pro se at said party's last known address.

Dated this 29th day of January, 2026.

Lauren King
United States District Judge

ORDER GRANTING HABEAS PETITION - 12